UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **United States of America**<br><br>v.<br><br>**Brendan Jonathan Mullane** | No. 25-CR-10201-MSM |

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE OR FOR A BILL OF PARTICULARS**

Defendant Jonathan Mullane moves this Court to dismiss the indictment, as it violates the Fifth and Sixth Amendments and Rule 7(c)(1) by restating statutory text without factual allegations. Because an insufficient indictment cannot be remedied with a bill of particulars, it should be dismissed for failing to state an offense. Fed.R.Crim.P. 12(b)(3)(B)(v). If this motion is denied, Mullane moves for an order requiring a bill of particulars, not as an adequate alternative remedy for the insufficient indictment, but as a necessity to pursue additional grounds for dismissal and to prepare for trial.

Background

On May 27, 2025, a Grand Jury alleged that Mullane violated 18 U.S.C. § 2261A(2)(B). Four similar counts were issued, identical aside from identifying four different victims and three different time periods. Count One may be taken as representative:

> From on or about February 5, 2025, through on or about May 1, 2025, in the District of Massachusetts and elsewhere, the defendant, BRENDAN JONATHAN MULLANE, with the intent to injure, harass, and intimidate another person, that is, VICTIM A, knowingly used interactive computer services and the internet, a means and facility of internet commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to VICTIM A.
>
> In violation of 18 U.S.C. § 2261A(2)(B).
>
> The indictment contains no other allegations of law or fact.

**I.    The indictment should be dismissed because it repeats broad generic statutory language without factual allegations.**

For purposes of a motion to dismiss, the court must look to the face of the indictment and assume that factual allegations are true. *United States v. Sampson*, 371 U.S. 75, 76 (1962); *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014). When considering the face of the indictment, the focus remains on the language used to charge the crimes. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictment returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001).

An indictment must satisfy two fundamental constitutional provisions. It must fulfill the Sixth Amendment's notice requirement by providing the nature and circumstances of the alleged crime so that the accused may defend himself. *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970). And it must satisfy the Fifth Amendment's edict that criminal cases be indicted by a grand jury and that citizens are not placed in jeopardy twice for the same offense. *Stirone v. United States*, 361 U.S. 212, 218 (1960).

To be constitutionally sufficient, the indictment must contain the elements of the alleged crime. *Hamling*, 418 U.S. at 117. "[I]t is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements …" *Russell*, 369 U.S. at 765; *Hamling*, 418 U.S. at 117 (both citing *United States v. Carll*, 105 U.S. 611, 612 (1882)). If the statute uses broad generic terms, then the indictment must "descend to the particulars" and provide

factual allegations that would constitute the crime alleged. *Russell*, 369 U.S. at 765 (citing *United States v. Cruikshank*, 92 U.S. 542, 558 (1875); *United States v. Simmons*, 96 U.S. 360, 362 (1877); *United States v. Hess*, 124 U.S. 483, 487 (1888)). An indictment that restates broad generic statutory text must marry the elements of the offense with factual allegations to satisfy the Fifth and Sixth Amendments. Rule 7(c)(1) is in accord; it requires the indictment to provide "a plain, concise, and definite written statement of the *essential facts constituting the offense charged*…" (emphasis added).

That a broad generic indictment must allege elements together with factual allegations is not novel. "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone." *Cruikshank*, 92 U.S. at 558 (1875). The Supreme Court has repeated this requirement: "[An indictment] must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense … with which he is charged." *Hamling*, 418 U.S. at 117-118; *Russell*, 369 U.S. at 765.

An indictment may be dismissed when it repeats broad generic statutory text without descending to specific factual allegations. *Russell*, 369 U.S. at 763-771; *Tomasetta*, 429 F.2d at 980-81 (indictment accusing defendant of making unspecified threats by unstated means to an unnamed person requires dismissal); *United States v. Nance*, 533 F.2d 699, 701-703 (D.C. Cir. 1976) (reversing and dismissing where the indictment failed to specify what false pretenses were involved); *United States v. Walsh*, 194 F.3d 37, 44 (2nd Cir. 1999) ("The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."); *United States v. Cecil*, 608 F.2d 1294

(9th Cir. 1979) (reversing and dismissing where a drug conspiracy indictment tracked statutory language without facts or circumstances pertaining to the conspiracy); *see United States v. Trinastich*, 354 F. Supp. 54, 55 (W.D. Mo. Feb. 9, 1973)(dismissing a kidnapping indictment under Rule 7 that alleged the victim "had been unlawfully seized, confined, inveigled, decoyed, kidnapped, carried away and held by [the defendant] for reward or otherwise, that is or the purpose of sexual gratification"); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017) (Jackson, D.J.) (dismissing seven child pornography related crimes for failing to make factual allegations).

The indictment alleges that Mullane used the internet to engage in a course of conduct with "the intent to injure, harass and intimidate another person." It does not specify any emails that comprised this conduct.

In *United States v. Yung*, 37 F. 4th 70, 77-79 (3rd Cir. 2022), the Third Circuit detailed the vague potential meanings of "harass" and "intimidate," which are not defined in the statute. The Court stated that "the broader definitions of 'harass' and 'intimidate' can describe nonviolent, nonthreatening speech" deserving First Amendment protection. *Id*. at 78. The Court saved the statute by applying a narrow reading of the terms, which is not the "better reading," but is not "implausible," avoiding overbreadth by limiting the statute's application. *Id*. at 80. The Court defined "intimidate" to mean that "a defendant must put the victim in fear of death or bodily injury; "harass" is similarly defined to require a fear of violence. *Id*.

In *United States v. Ackell*, 907 F.3d 67, 76 (1st Cir. 2018), the First Circuit followed the same path, saving § 2261A(2)(B) from unconstitutional overbreadth by defining "harass" as "criminal harassment," constituting "true threats" or speech integral to criminal conduct, and similarly narrowing the definition of "intimidate." These narrowed definitions cause the

indictment's lack of factual specificity to be uniquely problematic. By failing to specify the allegedly actionable emails, the government makes it impossible to know whether the First Circuit's narrowed definitions were applied. It is impossible to know whether grand jurors were told what a "true threat" is, or that they needed to find that there were communications that constituted a "true threat."

The "true threat" prong of <u>Ackell</u> is the only way in which an email could be actionable in this case. The "speech integral to criminal conduct" prong cannot be applied because the emails were not integral to any other criminal conduct. However, this analysis requires consideration of the content of the emails. For example, if someone sent emails threatening violence if the recipient did not pay a kidnapping demand, the emails could be integral to a crime other than cyberstalking. That analysis isn't possible because the government hasn't alleged or specified that any email was integral to a crime other than cyberstalking. (There isn't one.) For purposes of this motion, the issue of significance is simply that a grand jury could not find that the emails constituted cyberstalking based on the circular reasoning of their being integral to cyberstalking.

In *U.S. v. Sayer*, 748 F.3d 425 (1st Cir. 2014), the defendant had created false advertisements and online profiles in the victim's name, soliciting sex. He was charged with identity fraud. His communications were integral to his impersonation of the victim and were therefore unprotected. *Id*. at 433-34 ("Sayer does not claim that his acts of creating false online advertisements and accounts in Jane Doe's name or impersonating Jane Doe on the internet constitute legal conduct."); *see Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (speech integral to criminal conduct is not protected by First Amendment).

Mullane's emails cannot be illegal because they were integral to cyberstalking.

… the government argues that Sryniawski's e-mails were integral to the criminal conduct of cyberstalking itself. That argument is circular and unpersuasive. Congress may not define speech as a crime, and then render the speech unprotected by the First Amendment merely because it is integral to the speech that Congress has criminalized. To qualify as speech integral to criminal conduct, the speech must be integral to conduct that constitutes another offense that does not involve protected speech, such as antitrust conspiracy, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 (1949), extortion, *United States v. Petrovic*, 701 F.3d 849, 855 (8th Cir. 2012), or in-person harassment, *United States v. Osinger*, 753 F.3d 939, 941, 947 (9th Cir. 2014).

*United States v. Sryniawski*, 48 F. 4th 583, 588 (8th Cir. 2022).

If this case proceeds to an analysis of emails, Mullane intends to establish that his emails were like Sryniawski's, where there was "no other identified criminal conduct to which the jury could have found Sryniawski's e-mail communications were integral." *Id.* For now, the argument is simply that the government cannot avoid the requirement of specificity in the indictment by asserting that the emails were integral to cyberstalking.

While the First Circuit has not condemned the circular reasoning rejected in *Sryniawski* in language as sharp as the Eighth Circuit's, it has reached the same inevitable conclusion. In *Sayer,* the communications comprising cyberstalking were integral to an identity fraud scheme that led men to go to the victim's home seeking sex. 748 F.3d at 433-34. Rejecting Sayer's claim that his postings were protected, the Court referenced *Petrovic,* 701 F.3d at 849, finding that the First Amendment did not protect messages "which resulted in the defendant's § 2261A(2)(A) conviction, … integral to criminal conduct and unprotected under *Giboney*, as they carried out the defendant's extortionate threats to harass … his ex-wife if she terminated their sexual relationship." S*ayer*, 748 F.3d at 434.

In *Ackell*, the Court examined what constitutes "criminal purpose" under § 2261A(2)(B). Ackell did not argue that his own conduct was protected. He pursued a facial

6

overbreadth argument, which the Court rejected. Ackell's communications were integral to criminal conduct other than cyberstalking – he was extorting a minor to keep sending him sexually explicit photos over the internet with threats of sending photos to her family and threatening to rape another girl if she stopped. 907 F.3d at 82.

The unprotected category of "true threats," requires a "serious expression," conveying the intention to "commit an act of unlawful violence." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023); *Virginia v. Black*, 538 U.S. 343, 359 (2003). *Ackell's* holding that a message comprises harassment or intimidation, violating § 2261A(2)(B), only if it is a "true threat" or "speech integral to proscribable criminal conduct," would be nonsensical if communications that were part of the alleged cyberstalking could be treated as integral to criminal conduct on that basis alone. If emails comprising cyberstalking are unprotected because they are integral to cyberstalking, then the "true threat" category is meaningless. It would not matter whether an email was a true threat, since it would violate § 2261A(2)(B) regardless. All communications that were reasonably expected to cause emotional distress could fit the definitions of harassment or intimidation if, circularly, all that is required is that the communication was intended to cause emotional distress. This circular reasoning would make it unnecessary to ever consider whether a communication was a "true threat," so long as the communication was part of the cyberstalking conduct. The only way for the true threat doctrine to survive in the context of § 2261A(2)(B) is if "speech integral to proscribable criminal conduct" means conduct other than cyberstalking itself. *See Ackel,* 907 F.3d at 76.

Absent proper instructions, a grand juror likely would find that sending dozens of lewd, insulting emails would constitute harassment. But it does not constitute harassment when the term requires a "true threat," where the speaker "means to communicate a serious

expression of an intent to commit an act of unlawful violence ..." *Id*. at 75. Mullane's emails were replete with vulgarities that could be considered harassment under a common understanding of the term, but not as narrowed by the First Circuit. Evaluating the issue requires an indictment that descends to the particulars by making specific factual allegations. *See Russell*, 369 U.S. at 765; *Cruikshank*, 92 U.S. at 558. The lack of specificity precludes Mullane from defending against the indictment and would permit conviction "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770. We have no idea whether the indictment resulted from the government identifying allegedly threatening emails and providing a definition of "harassment" that required a finding of a "true threat" of violence, or whether grand jurors were simply given all the emails and asked to find that they constituted harassment.

The lack of specifics in the indictment that was found insufficient by the First Circuit in *Tomasetta* was more egregious than in this case. Not only were the threats unspecified, but the means and recipient also were undisclosed. 429 F.2d at 979. However, the fundamental impairment of due process caused by the lack of specificity is comparable. Because it is impossible to know which emails the grand jury thought illegal, or whether their understanding of illegality was consistent with the First Circuit's narrowed definitions of "harass" and "intimidate," the government could seek a conviction based on evidence "divorced from that upon which the grand jury based its indictment." *Id*. at 980. The lack of specificity is an invitation to arbitrariness and unfettered prosecutorial manipulation. "The prosecution may not have the power 'to roam at large' in this fashion." *Id*. (*citing Russell,* 369 U.S. at 770-771; *United States v. Agone*, 302 F.Supp. 1258, 1261 (S.D.N.Y. 1969)).

The government's failure to identify any email that constituted a "true threat," or that

was integral to a crime other than cyberstalking, renders the indictment invalid. It should not be saved with a bill of particulars and should be dismissed.

**II.    If the Court does not dismiss the indictment, it should order the government to produce a bill of particulars.**

Although it may be tempting, a bill of particulars cannot correct the indictment and should not be employed to spare the government the consequences of its conduct. "[I]t is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 770. "This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." *Id; United States v. Thomas*, 444 F.3d 919, 922-923 (D.C. Cir. 1971) (reversing because the indictment lacked factual particularity and finding the error could not be remedied by a bill of particulars); *Hillie,* 227 F. Supp. 3d at 80-82 (dismissing indictment and holding that a bill of particulars was no remedy).

If the Court finds that the indictment is constitutionally sufficient, Rule 7(f) empowers the Court to direct the filing of a bill of particulars. Fed. R. Crim. P. 7(f). Rule 7(f) "specifically empowers the trial court to direct the filing of a bill of particulars and gives the trial court "very broad discretion in ruling upon requests for such bills." *Will v. United States*, 389 U.S. 90, 98-99 (1967). "The purpose of a bill of particulars is to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy." *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir. 1989); *United States v. Sepulveda*, 15 F.3d 1161, 1192-93 (1st Cir. 1993)(holding that a motion for a bill of particulars should be granted "… if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause").

The defendant does not suggest a bill of particulars as a satisfactory remedy to the inadequacy of the indictment and does not waive his right to appeal a denial of dismissal based on such inadequacy. Nonetheless, if the Court declines to dismiss the indictment, it should order the government to produce a bill of particulars, identifying the emails which the government maintains violated § 2261A(2)(B), not because it is an appropriate remedy for an insufficient indictment, but because, if dismissal is not ordered, it is necessary to enable Mullane to proceed with further motions to dismiss and proceed to trial with due process. If dismissal is nor ordered, Mullane plans to seek dismissal on at least two other grounds: that no email constituted a "true threat" and that the statute should be found void for vagueness. Both require evaluation of the content of the emails the government alleges to be illegal. Discovery review cannot clarify which emails these may be. Mullane should not be forced to guess which emails the government maintains were illegal in order to move for dismissal. Nor should he learn for the first time during opening statements which emails he must defend.

<u>Conclusion</u>

For the reasons stated above, the indictment should be dismissed; if the Court declines to dismiss the indictment, it should order the government to produce a bill of particulars.

REQUEST FOR ORAL ARGUMENT

JONATHAN MULLANE
By his Attorney,

/s/ *Keith Halpern*
Keith Halpern, BBO # 545282 572
Washington Street, Suite 19
Wellesley, MA 02482

10

## L.R. 7.1 CERTIFICATE

Undersigned counsel has conferred with the government in good faith prior to filing this motion.

/s/ *Keith Halpern*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 1, 2026.

/s/ *Keith Halpern*

11